ALLEN, Judge.
This is a dissolution of marriage proceeding in which both parties appeal the trial court’s February 17, 1989 order establishing the value of the wife’s special equity interest in certain real property. The wife also appeals several provisions of the trial court’s March 15, 1989 order, including a provision modifying the earlier custody award to provide for shared parental responsibility. We affirm in part and reverse in part.
The parties’ marriage was dissolved in 1981. A supplemental final judgment was entered in 1982 granting the wife a special equity interest in property held in the husband’s name and known as Lot 29. The value of her interest was held to be one-half of the value of the property over and above all existing mortgages.[1]
In 1986, the property was sold pursuant to a contract entered into between the husband and a third party. Also in that year, the trial court entered an order adjudging the value of the wife’s interest to be $27,-350. This figure represented one-half of the value of Lot 29, after deducting for certain enumerated mortgages, as of the 1982 supplemental final judgment. Among the mortgages enumerated were mortgages to Park Bank for $18,000, Commercial *362 Bank for $6,000, and Marie Kearney for $9,800.
The wife appealed the court's valuation. Relying upon the holding in DuPree v. DuPree, 158 Fla. 439, 28 So.2d 907 (1947), we reversed and held that the value of the wife’s interest should be determined as of the date of sale, rather than the date the special equity was awarded, as her vested interest was subject to appreciation and depreciation. Poole v. Savage, 525 So.2d 982, 983 (Fla. 1st DCA 1988). We further held that her interest was subject to deductions for one-half of various expenses associated with the property, including the mortgage, tax and insurance payments the husband incurred from 1982 to the date of sale in 1986. Id. The case was remanded for proper valuation of the property, as well as for further proceedings regarding the Park Bank and Commercial Bank mortgages, the valuations of which were unsupported by the record.
We now revisit this case to review the court’s findings on remand, which both parties contend are erroneous. Pursuant to our directive, the trial court redetermined the value of the wife’s special equity by order entered February 17, 1989. The value of the wife’s special equity was determined to be $52,246.02, which represented one-half the value of the property on the date of the sale, after deducting for enumerated mortgages and expenses. We reject the parties’ arguments that there was a lack of competent, substantial evidence to support the trial court’s finding as to the total fair market value of the property on the date of the sale. See Peoples Fed. Sav. and Loan Ass’n of Tarentum, Pa. v. Shoreline Garden Townhomes, II, Ltd., 538 So.2d 864, 866 (Fla. 1st DCA 1988) rev. denied, 542 So.2d 1334 (Fla.1989). However, we find that the trial court’s finding as to the value of the wife’s special equity is incorrect due to incorrect computation of certain deductions for mortgages and expenses.
The trial court determined the Marie Kearney mortgage to be in the amount of $14,212.59. However, in Poole v. Savage, supra, we upheld the trial court’s determination that this mortgage was in the amount of $9,800, and the record fails to support a finding that the indebtedness was subject to interest. Therefore, the $9,800 valuation became the law of the case, and the wife’s interest should have been reduced by one-half of $9,800. See Alford v. Summerlin, 423 So.2d 482 (Fla. 1st DCA 1982).
We also find error in the court’s deduction for 1981 interest on the Park Bank mortgage. In the prior appeal, we held that deductions on remand should be made only for those payments the husband incurred from the date of the 1982 supplemental final judgment to the date of sale. Once again, this holding became the law of the case and prohibited deductions for payments made outside the established time frame.
The court’s deductions for property taxes paid in the years 1982 and 1984 through 1986, as well as insurance paid in 1982, also appear to be improper. The husband testified at the hearing on remand that payments for the First Federal mortgage on Lot 29 were increased in part to cover taxes and insurance not previously escrowed, but the wife’s special equity interest was reduced by one-half the amount of payments made on the First Federal mortgage. Therefore, to require additional deductions for taxes and insurance accounted for in these mortgage payments would effectively reduce the wife’s interest twice for the same expenses. We, therefore, remand for further proceedings on the accuracy of these deductions. The trial court should take additional testimony, if necessary, on this issue.
Because the wife is required to share in the property’s maintenance expenses for the period from 1982 through 1986, she contends she is entitled to offset such amount by the reasonable rental value of the property during the husband’s possession. As authority, she relies upon Barrow v. Barrow, 527 So.2d 1373 (Fla.1988). In Barrow, the husband held title to property which became the marital home. A final judgment of dissolution granted the *363 wife a half-interest in the residence as lump sum alimony. Subsequently, the wife moved to another state and filed an action for partition, wherein she alleged entitlement to one-half the rental value of the property as an offset against responsibility for one-half the maintenance expenses incurred during the husband’s exclusive possession. Our Supreme Court recognized the common law rule that a cotenant who holds possession of property but receives no profits or rents is not accountable to the non-possessory cotenant unless he holds adversely or as a result of ouster. Id. at 1375. The court recognized an applicable exception, however, where a cotenant holding possession seeks contribution for expenses associated with preserving and improving the property. In such case, the expenses may be offset by the rental value of the cotenant’s use which exceeds his proportionate share of ownership. Id. at 1376.
We agree that the holding in Barrow is applicable to the situation presented here. The fact that the property interest involved in Barrow was alimony, as opposed to a special equity, makes no practical difference. Because the wife is responsible for sharing in the expenses incurred to maintain Lot 29, she is rightfully entitled to offset such deductions from her interest by half the rental value of the property. This is particularly so in light of the husband’s testimony that he received rental payments for mobile homes located on the property during the time in which he alone was in possession. Clearly, it would be unreasonable to require the wife to share the burden, but deny her the right to reap the reward of the use of the property. To hold otherwise would permit the husband to pay only one-half the expenses but receive all the benefits of the property, thus resulting in a windfall to the husband. On remand the trial court should take additional testimony, if necessary, to establish the rental value of the wife’s interest in the subject property from the date of the 1982 supplemental final judgment to the date of the 1986 sale of the property.
We note that under the terms of the 1986 sale, a portion of the sale price was paid down by the purchaser, with the balance financed over ten years at a ten percent interest rate. Since payment of existing encumbrances and other expenses exhausted the down payment, the trial court directed that the value of the wife’s special equity in Lot 29 be paid off over the ten year term of the mortgage at the interest rate provided in the mortgage. As security for such payment, the trial court ordered the husband to execute an assignment of the promissory note and mortgage to the wife to the extent of the value of her special equity. We find such provision for payment of the value of the wife’s special equity to be within the trial court’s discretion.
The trial court entered another order on March 15, 1989. That order included a provision modifying the 1982 supplemental final judgment. The supplemental final judgment had awarded the wife sole custody and control of the minor children, but the March 15, 1989 order modified the custody provisions by ordering shared parental responsibility. The supplemental final judgment predated the enactment of Section 61.13, Florida Statutes, relating to shared parental responsibility. Section 61.13 has no retroactive application. Malchiodi v. Malchiodi, 431 So.2d 301 (Fla. 3d DCA 1983). Therefore, the dispositive issue as to the modification of custody is whether the husband presented competent, substantial evidence proving:
(1) A substantial or material change in the circumstances of the parties since entry of the original custody order, and
(2) That the welfare of the children would be promoted by a modification of the custody provision.
See Zediker v. Zediker, 444 So.2d 1034 (Fla. 1st DCA 1984); Shelley v. Shelley, 480 So.2d 166 (Fla. 1st DCA 1985) rev. denied, 491 So.2d 280 (Fla.1986); and Belford v. Belford, 159 Fla. 547, 32 So.2d 312 (1947). We find that the husband did not present competent, substantial evidence satisfying the two prongs of the Zediker test. Therefore, the court erred in modify *364 ing the supplemental final judgment to provide for shared parental responsibility.
We find the remaining arguments of the parties to be without merit.
Accordingly, we reverse that portion of the February 17, 1989 order which determined the value of the wife’s special equity in Lot 29. We remand for a redetermination of such value in accordance with this opinion. We also reverse that portion of the order of March 15, 1989, which provided for shared parental responsibility. In all other respects the orders appealed from are affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings in accordance with this opinion.
ERVIN and ZEHMER, JJ., concur.

. The wife appealed the court’s denial of a special equity in an adjoining lot. This court affirmed without opinion.